# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1752

RAYMOND RODRIGUEZ,
Appellant
v.

LOYAL SOURCE GOVERNMENT SERVICES

_____

On Appeal from the U.S. District Court, M.D. Pa.
Judge Julia Munley, No. 3:22-cv-01362

Before: PHIPPS, FREEMAN, and MASCOTT, *Circuit Judges*
Submitted: May 27, 2026; Filed: July 24, 2026
_____

NONPRECEDENTIAL OPINION[*]

FREEMAN, *Circuit Judge*. Raymond Rodriguez sued his former employer, Loyal Source Government Services ("Loyal Source"), for discrimination on the basis of race, national origin, and age. The District Court granted summary judgment in Loyal Source's favor. For the following reasons, we will AFFIRM.

**I**[1]

Loyal Source is a staffing agency. It hired Rodriguez to work on its subcontract with Goldbelt-Frontier, LLC ("Goldbelt") to provide services at a Pennsylvania Army Depot. His employment began in April 2020, at which time Rodriguez was 65 years old.

_____

[1] We recount the facts in the light most favorable to Rodriguez. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024).

Rodriguez is of Puerto Rican and Cuban descent. On his first day working for Loyal Source, he arrived at the Army Depot in a car with a small Puerto Rican flag hanging from its rearview mirror. His supervisor, Timothy Bush, saw the flag and said, "[N]ot another Puerto Rican." App. 483.[2] On another occasion, Bush heard Rodriguez playing a Spanish-language voice message and said it was "Spanish garbage" and "we don't speak Spanish here in this place." App. 426–27.

One of Rodriguez's coworkers told Rodriguez that he was "stupid" and did not know geography except for "Spanish places." App. 403. That same coworker also made disparaging comments about Cuban sandwiches Rodriguez brought to work and said other "Spanish food" Rodriguez brought looked and smelled bad. Other coworkers also disparaged Rodriguez's food, comparing its taste to excrement and making comments about "how us Anglo-Saxons deal with Spanish food." App. 422. During one lunch period, Bush told Rodriguez, "[T]ake that stinking food out of here, makes me sick, go eat in the back of the warehouse." App. 422. From that point forward, Rodriguez ate lunch away from the other workers.

Bush and others also made comments that directly or indirectly referenced Rodriguez's age.

In late July 2020, Bush reported concerns about Rodriguez's work performance to his contact at Goldbelt. Rodriguez's job was to perform testing and repairs on Army equipment. Among other things, Bush reported that Rodriguez was unfamiliar with the

---

[2] Bush did not work for Loyal Source.

equipment on the site, required "constant support and assistance even with minor repairs," and worked at such a slow pace that he impeded the team's schedule. App. 542.

In early September 2020, Bush reported to his Goldbelt contact that Rodriguez's performance had not changed. Bush provided details about recent problems, and he said Rodriguez had been unable to complete an online questionnaire required for all workers at the site. Goldbelt forwarded the report to its contact at Loyal Source, which told Rodriguez he would have one final chance to complete the online questionnaire or lose his ability to work at the Army Depot. In an email response to Loyal Source, Rodriguez complained of age discrimination by Bush. He later provided additional information to a Loyal Source human resources representative by telephone.

Rodriguez continued to work at the Army Depot, and in March 2021 Bush spoke to Rodriguez about two concerns: Rodriguez's use of a cell phone during work hours and the slow pace of Rodriguez's work on certain pieces of equipment. Rodriguez responded to both concerns in an email. He said he was using his cell phone for work purposes, and he provided numerous reasons for the pace of his work, including his being fairly new, learning different types of equipment, lacking proper training, having computer problems, and doing quality work rather than cutting corners. In the same email, Rodriguez said he had suffered age discrimination for months and that Bush was engaging in discrimination.

In April 2021, Bush sent Goldbelt a memorandum listing numerous performance incidents Rodriguez had between November 2020 and April 2021. Goldbelt forwarded

that memorandum to Loyal Source and requested a discussion about Rodriguez's performance.

Meanwhile, Rodriguez had been told that he needed to make his own travel arrangements for a mid-May work trip. On May 4, 2021, Bush exchanged emails with a Loyal Source staffer about how Rodriguez had not made his travel arrangements. On May 5—one week before the trip—Goldbelt removed Rodriguez from the trip for failure to make timely arrangements.

On May 6 at 3:01 p.m., Rodriguez emailed Loyal Source a 16-page memorandum that responded to complaints he received a week earlier about his work performance. In the memorandum, Rodriguez also complained of age and race discrimination.[3] At 4:25 p.m. that same day, Goldbelt emailed the following message to Loyal Source: "Per our conversation earlier and after further deliberation with Mr. Bush, we feel it best to move on from Mr. Rodriguez, and have him removed from the contract for performance and inability to complete administrative tasks critical to his job." App. 88. Loyal Source terminated Rodriguez's employment at the Army Depot the next day—May 7, 2021.

Rodriguez consulted with attorneys and was told that he had 300 days to file a charge of discrimination with the EEOC. He first contacted the EEOC on March 2, 2022, and received a draft charge on March 3. He signed and filed the charge on March 4, 2022.

---

[3] The May 6 email contained Rodriguez's first complaint of race discrimination.

Rodriguez later sued Loyal Source for discrimination based on race, national origin, and age. Following discovery, the District Court granted summary judgment in Loyal Source's favor, and Rodriguez timely appealed.

II[4]

Rodriguez brought discrimination claims under Title VII (race and national origin), the ADEA (age), and 42 U.S.C. § 1981 (race). The District Court determined that the Title VII and ADEA claims are time-barred and the Section 1981 claims fail as a matter of law. We agree.

A

Rodriguez needed to file his Title VII and ADEA with the EEOC within 300 days of a triggering act. *See Watson v. Eastman Kodak Co*., 235 F.3d 851, 854 (3d Cir. 2000). The triggering act was his termination on May 7, 2021, so his EEOC deadline was March 3, 2022. Because Rodriguez did not file until March 4, 2022, he seeks equitable tolling of the filing deadline. He argues that equitable tolling is appropriate because of extraordinary circumstances. *See D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 750–51 (3d Cir. 2020). But to obtain equitable tolling Rodriguez must establish that some extraordinary circumstance prevented him from timely filing *and* that he pursued his rights diligently. *Id.* at 752. We need not address extraordinary circumstances because he has not established diligence.

---

[4] The District Court had jurisdiction under 18 U.S.C. § 1331. We have jurisdiction under 18 U.S.C. § 1291. We review the District Court's conclusions de novo, and we view the facts in the light most favorable the non-moving party. *See Qin*, 100 F.4th at 469.

In his appellate brief, Rodriguez provides no explanation for why he waited until the 299th day to initiate the EEOC process. Despite that wait, he received a draft charge on the 300th day: March 3. He knew that was the deadline, yet he still waited one more day to file. He argues that tolling is warranted because he met with the EEOC before the deadline and "unknown changes were required to be made to [the] draft [charge]" before the filing date. Opening Br. 10. This vague assertion does not demonstrate diligence, so tolling is unwarranted; the Title VII and ADEA claims are time barred.

B

Rodriguez also argues that he was terminated because of his race and was subject to a racially hostile work environment, both in violation of 42 U.S.C. § 1981. He cannot prevail on either claim.[5]

1

The parties do not dispute that Rodriguez made a prima facie case of discriminatory termination or that Loyal Source articulated legitimate nondiscriminatory reasons for the termination: ongoing performance problems, combined with a failure to arrange work travel. *See Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). They dispute only whether Rodriguez's evidence of pretext defeats summary judgment.

To discredit the employer's stated reasons for termination, an employee must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[5] Loyal Source argues that it cannot be liable because it did not make the decision to remove Rodriguez from his job assignment. We do not reach this argument because Rodriguez's claims would fail even if Loyal Source was the decisionmaker.

contradictions in the employer's proffered legitimate reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Rodriguez does not argue that a factfinder could disbelieve the legitimate reasons Loyal Source articulated. *See id*. at 764. Instead, he argues that, despite his performance problems and failure to arrange work travel, discrimination factored in to Loyal Source's decision to terminate him. *See id*. But none of the racial comments he points to were made in the context of documenting his performance problems or deciding to terminate his employment.[6] *Cf. Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997) (en banc) (concluding that comments about a protected factor were insufficient proof of discriminatory termination where the comments were not about whether the plaintiff should be retained or fired). Moreover, many of the comments he complains about were made by nondecisionmakers. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 546–47 (3d Cir. 1992). Additionally, Rodriguez has not pointed to any similarly situated employees who were treated differently or any prior incidents of discrimination at the Army Depot or by Loyal Source. *See Fuentes*, 32 F.3d at 765. In sum, the racial comments he points to do not reasonably permit a finding that that race was a motivating cause of his termination.

2

To analyze a hostile work environment claim, we look to "the overall scenario" rather than "individual incidents." *Qin*, 100 F.4th at 471 (citation modified). We

---

[6] The parties dispute whether some of the comments about Rodriguez's food were derogatory or based on race. We assume without deciding that they were both.

consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation modified).

Over a period of nearly 13 months, Rodriguez's supervisor and coworkers disparaged the "Spanish food" Rodriguez brought to work on some unknown number of occasions, and the supervisor ultimately directed Rodriguez to eat lunch elsewhere because of the food smells; the supervisor commented on Rodriguez's Puerto Rican heritage and said the workers do not speak "Spanish garbage" in the workplace; and a coworker insulted Rodriguez's intelligence while saying Rodriguez only knew the geography of "Spanish places." These incidents, while disturbing, are "mere offensive utterance[s]" that are not severe enough to create a hostile work environment. *Qin*, 100 F.4th at 471; *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182 (3d Cir. 2020) (rejecting that overtly racial statements such as "Hey Arabia Nights" or "Hey Big Egypt" were severe enough to support a hostile work environment claim); *cf. Castleberry*, 863 F.3d at 265–66 (concluding that a supervisor's use of a racial epithet, followed by a threat of termination, was severe enough to establish a hostile work environment claim). Nor is there evidence that these comments—most of which were about the food Rodriguez brought for lunch—were "so pervasive that they altered the working environment." *Ali*, 957 F.3d at 182; *see also Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3d Cir. 2023). Thus, Rodriguez failed to establish that he was subject to a hostile work environment.

\*     \*     \*

For the reasons discussed above, we will AFFIRM the District Court's order granting summary judgment to Loyal Source.